Doreen PINO, Plaintiff–Appellee,

v.

Raymond LOCASCIO, Defendant,

New York Hospital, Cornell Medical Center, Westchester Division, Defendant–Appellant.

No. 397, Docket 96–7388.

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 1996.

Decided Nov. 25, 1996.

Robert E. Crotty, Kelley, Drye & Warren, New York City, for Defendant–Appellant.

Jonathan Lovett, Lovett & Gould, White Plains, NY, for Plaintiff–Appellee.

Before Van GRAAFEILAND, WINTER, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Judge.

Defendant appeals from an order of the United States District Court for the Southern District of New York (Brieant, J.) awarding plaintiff attorney's fees and costs in the amount of $55,433.29, even though a jury awarded Plaintiff only $1.00 in nominal damages.

## BACKGROUND

In May 1989, Doreen Pino ("Pino") was hired as a clerk in the Patient Finance Department of The New York Hospital, Westchester Division (the "Hospital"). Her department was staffed entirely by females and was supervised by Raymond Locascio ("Locascio"). In August 1994, after the birth of her second child, Ms. Pino decided to leave the Hospital. During her exit interview, Pino complained of sexual harassment by Locascio, and added that someday someone might sue.

The Hospital's Human Resources Manager immediately began an investigation of Locascio and discovered substantial proof that he had indeed harassed Pino and other women in the Department over a long period of time. Two weeks after Pino's exit interview, the Hospital placed Locascio on a month-long leave of absence, and then transferred him to its New York City facilities, stripping him of any supervisory authority and cutting his salary in half. Locascio soon resigned from the Hospital.

In January 1995—more than three months after Locascio resigned—Pino sued Locascio and the Hospital in the United States District Court for the Southern District of New York (Brieant, J.). Her complaint alleged: (1) sexual harassment (hostile work environment) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.; (2) constructive discharge, also in violation of Title VII; and (3) retaliation in violation of both Title VII and § 296 of the New York Executive Law ("Human Rights Law"). Pino sought $5 million in actual damages and $10 million in punitive damages from the Hospital. She also sought $1 million in actual damages and $5 million in punitive damages from Locascio. In addition, she asked for declaratory and injunctive relief in the form of an order requiring the Hospital to establish a procedure for reporting and dealing with sexual harassment. Lastly, and most importantly for present purposes, Pino asked for reasonable attorney's fees and costs pursuant to 42 U.S.C. § 2000e–5(k).

After several months of discovery, Pino voluntarily dismissed her claims against Locascio. The parties continued discovery regarding Pino's claims against the Hospital.

In December 1995, the Hospital attempted to settle the case. Pino demanded $300,000, plus attorney's fees. The Hospital offered $150,000—$75,000 for Pino and $75,000 in attorney's fees. The Hospital's offer required that the settlement remain confidential and provided for 18 monthly payments to Pino. Pino rejected this offer.

In early January 1996, just prior to jury selection, the district court suggested that the Hospital modify its offer and give Pino the $75,000 in a lump sum. The Hospital complied with the Court's request, but Pino rejected this offer too, demanding $150,000 plus attorney's fees. Negotiations collapsed and the case went to trial.

On the first day of trial Pino withdrew her constructive discharge and retaliation claims as well as her requests for injunctive and declaratory relief. Thus, Pino's only remaining claim was the hostile environment sexual harassment charge. At the end of the case, Pino's counsel withdrew Pino's claim for emotional distress damages on the sexual harassment charge. In summation, Pino's counsel asked the jury for $600,000 in compensatory damages.

After deliberating for less than an hour, the jury asked the court whether it was required to award Pino damages if it found the Hospital liable. Over the Hospital's objection, Judge Brieant instructed the jury that if it found that Pino had been sexually harassed, but had failed to prove damages, it was required to award Pino at least $1.00 in nominal damages. Five minutes later, the jury returned a verdict for Pino and awarded her $1.00 in nominal damages.

A few days after the jury's verdict, the Hospital's administrator, Fred Raines, resigned. The Hospital claims Raines' resignation was the result of an administrative restructuring by the Hospital's new medical director and had nothing to do with Pino's trial. Pino sees it differently. She argues that the resignation was the direct result of the verdict she got against the Hospital. The district court made no finding on this issue.

Pino's attorney then sought $92,029.50 in attorney's fees and $4,842.49 in costs. The district court concluded that attorney's fees were proper because the trial "confer[ed] a generalized benefit on the public and vindicated the rights of this particular plaintiff." The district court cited our decision in *Cowan v. Prudential Insurance Company of America*, 935 F.2d 522 (2d Cir.1991), as support for awarding Pino fees and costs. It did not, however, cite the Supreme Court's later decision in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). The court reduced Pino's request to eliminate the time spent on unsuccessful claims and awarded Pino $50,590.80 in attorney's fees and $4,842.49 in costs.

The Hospital now appeals the district court's award of attorney's fees arguing that, under *Farrar*, attorney's fees are inappropriate when a plaintiff wins only nominal damages.

## DISCUSSION

■ There is only one issue presented here: Did the district court abuse its discretion by awarding attorney's fees and costs to a plaintiff who recovered only nominal damages? We conclude that the Supreme Court substantially answered this question in *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

■ 42 U.S.C. § 2000e–5(k) provides that "[i]n any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee...." 42 U.S.C. § 2000e–5(k). We review a trial court's decision to award attorney's fees to a prevailing party for an abuse of discretion. *LaRouche v. Kezer*, 20 F.3d 68, 71 (2d Cir.1994).

■ Determining whether an award of attorney's fees is appropriate requires a two-step inquiry. First, the party must be a "prevailing party" in order to recover. *Farrar*, 506 U.S. at 109, 113 S.Ct. at 571–72. If she is, then the requested fee must also be reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). The most important factor in determining the reasonableness of a fee is the degree of success obtained. *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574–75.

In *Farrar*, the Supreme Court addressed how this inquiry plays out when the plaintiff has won only nominal damages. 506 U.S. at 103, 113 S.Ct. at 569. Plaintiffs who win nominal damages are, indeed, prevailing parties for purposes of fee awards. *Id.* at 112, 113 S.Ct. at 573–74. Yet, with regard to the reasonableness prong, the Supreme Court stated that "[i]n some circumstances, even a plaintiff who formally 'prevails' ... should receive no attorney's fees at all. A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party." *Farrar*, 506 U.S. at 115, 113 S.Ct. at 575. The Court noted that "when a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, ..., the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S.Ct. at 575. The Court added that fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only "the moral satisfaction of knowing that a federal court concluded that [their] rights had been violated." *Id.* at 114, 113 S.Ct. at 574.

In short, while there is no *per se* rule that a plaintiff recovering nominal damages can never get a fee award, *Farrar* indicates that the award of fees in such a case will be rare. *Id.* at 115, 113 S.Ct. at 575. Doreen Pino's lawsuit is not the rare exception. Ms. Pino sued both her former supervisor, Raymond Locascio, and the Hospital alleging: (1) hostile work environment sexual harassment; (2) constructive discharge; and (3) retaliation, all in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and § 296 of New York Executive Law. She sought over $21 million in compensatory and punitive damages from both Locascio and the Hospital, including damages for emotional distress. In addition, she sought injunctive and declaratory relief.

Ultimately, Pino prevailed on *only* one claim—hostile work environment sexual harassment—against *only* the Hospital. And she received only $1.00 in damages. The only way Pino could have been less successful is if she had lost altogether, and then, of course, she would not qualify as a prevailing party.

If this is not a case in which *Farrar* precludes a fee award it is hard to construct one. In her concurring opinion in *Farrar*, Justice O'Connor noted that "if ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar. He filed a lawsuit demanding 17 million dollars from six defendants ... he got one dollar from one defendant." *Id.* at 116, 113 S.Ct. at 575. Justice O'Connor found it "hard to envision a more dramatic difference" than asking for $17 million and getting only $1.00. We have before us a more dramatic difference: Ms. Pino asked for $21 million and got only $1.00.

In an attempt to justify the district court's award, Pino emphasizes two additional forms of relief that should be considered when determining the appropriateness of awarding attorney's fees—the resignations of Raymond Locascio and Fred Raines. We are not persuaded.

First, the record is barren of any proof of a causal connection between Pino's lawsuit and the two resignations. We have consistently held that to recover attorney's fees "there must be a causal connection [between the lawsuit and the relief]; that is, the lawsuit must be 'a catalytic, necessary, or substantial factor in attaining the relief.'" *Marbley v. Bane*, 57 F.3d 224, 234 (2d Cir. 1995) (citations omitted). There is no evidence, much less a finding, that Pino's lawsuit was such a factor. Locascio resigned more than three months before Pino started her lawsuit. Even if Pino's Delphic threat to sue, made during her exit interview, is construed to be the cause of Locascio's suspension and subsequent resignation, her actual lawsuit was still unnecessary. Locascio was long gone from the Hospital, with no apparent chance of returning, before Pino sued.

As for Raines' resignation, the parties disagree on the cause. Pino believes that the jury's verdict against the Hospital resulted in Raines' resignation. The Hospital asserts that the resignation was the result of an administrative reorganization by the Hospital's new medical director and, thus, was completely unrelated to Pino's suit. As noted above, the district court failed to make any finding on this issue. We are unconvinced by Pino's argument. It seems unlike-

ly that the Hospital would force Raines to resign after a $1.00 nominal damages award. If the Hospital were truly concerned about Pino's suit, it had greater motivation to force Raines out before the trial. We are unpersuaded that Pino's paltry verdict would prompt the Hospital to fire one of its top executives.

■ Even if we accept that there was a causal connection between Pino's lawsuit and the two resignations, we do not believe that attorney's fees would be justified. Although we recognize that litigation can accomplish much besides awarding money damages, not every tangential ramification of civil rights litigation *ipso facto* confers a benefit on society.

Pino relies heavily for the award of attorney's fees on *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). In *Cabrera*, we held that an award of attorney's fees was appropriate even though a plaintiff received only nominal damages. In *Cabrera*, however, the plaintiff prevailed on a novel issue of law—that landlords can be liable for employing real estate brokers who are engaged in racial steering. *Cabrera*, 24 F.3d at 393. Although the plaintiffs in *Cabrera* received only nominal damages, their lawsuit created a new rule of liability that served a significant public purpose. *Id.* The litigation in *Cabrera* accomplished more than giving the plaintiffs "the moral satisfaction of knowing that a federal court concluded that their rights had been violated." *Farrar*, 506 U.S. at 114, 113 S.Ct. at 574.

■ Our holding today is not inconsistent with *Cabrera*, but only demonstrates how limited the *Cabrera* holding is. The vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore, will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief.

■ We hold that under *Farrar v. Hobby* attorney's fees and costs are usually not appropriate when a plaintiff recovers only nominal damages. While there may be situations where such an award is appropriate, the present record does not support an exception.

## CONCLUSION

The judgment of the district court is REVERSED and REMANDED with instructions to deny plaintiff's application for attorney's fees and costs.