OPINION OF THE COURT
Kevin J. Kerrigan, J.
Motion by plaintiff for a new trial, and motion by defendants for a judgment notwithstanding the verdict and cross motion by plaintiff for attorney’s fees are consolidated for disposition.
This is an action for monetary damages for false arrest and imprisonment and violation of constitutional rights. On April 17, 2000, plaintiff, while driving his motor vehicle, a black Lexus, was stopped by Police Officer Papadopoulos and his partner, Police Officer Dominick Maranzano (sued herein as Police Officer John Doe). The officers testified at trial that the reason for their initial stop of plaintiff’s vehicle was because they observed that plaintiff failed to signal before making a *163 turn. Summonses were eventually issued to plaintiff for that infraction and for the failure of his front seat passenger to wear a seat belt. Maranzano testified that before being sent out on patrol, he and Papadopoulos were briefed to look out for an Asian male driving a black Nissan who was a suspect in an investigation of organized crime activity in the area. They were to stop the suspect vehicle if they witnessed the commission of a traffic offense. Therefore, the observation of plaintiff, an Asian male, failing to signal before turning, provided the pretext to stop his vehicle to investigate whether he might be the suspect they were told to seek out.
After being stopped, plaintiff was asked to produce his license. Papadopoulos testified that the license appeared to be counterfeit. Papadopoulos also testified that when he asked plaintiff where he obtained the license, plaintiff responded that he bought it in Manhattan. Also, the license did not list plaintiffs home address in Queens on it but rather his business address in Brooklyn. Papadopoulos additionally testified that he saw on the driver’s side backseat an open bag visibly containing United States currency. Papadopoulos testified that he intended to issue a summons to plaintiff for failing to signal and for the failure of his frontseat passenger to wear a seat belt, but since a summons is in lieu of an arrest, he had to verify plaintiff’s identity before he issued the summons. He testified that since he did not have the equipment on hand to test the authenticity of the license, he took plaintiff into custody and brought him to the 109th Precinct where the authenticity of the license and plaintiff’s identity could be verified and established. He also decided to take plaintiff into custody because plaintiff had a bag with $16,000 in cash, but failed to support his explanation that the money had just been collected from customers of his wholesale grocery business without any receipts or other documentation. Plaintiff at trial denied that he committed a traffic infraction, denied that he told the officers that he had bought the license, testified that the bag containing the currency was closed and that the cash was not in plain view, and that he had no receipts to show them.
Plaintiff was handcuffed and taken to the 109th Precinct. The testimony conflicted as to whether the handcuffs were removed from plaintiff. It was determined at the Precinct that his license was, in fact, authentic, and, upon such authentication and verification of his identity, plaintiff was immediately released. The $16,000 was vouchered and released to plaintiff *164 after approximately one month. The entire time interval, from the time of plaintiff’s initial traffic stop to his release from custody, was some two to three hours, in the estimation of the officers. Plaintiff testified that he was at the police station for half an hour before he was released. All agreed that plaintiff was never formally placed under arrest.
In terms of the traffic summonses, plaintiff testified that he later paid them because he did not have the time to contest them.
The jury returned a verdict for plaintiff finding that he was falsely arrested and that his federal constitutional rights were violated. The jury also found that plaintiffs false arrest and violation of his constitutional rights was a substantial factor in causing his injuries. However, as to damages, the jury only awarded plaintiff $400 representing past pain and suffering, including the loss of enjoyment of life, from the date of the incident on April 17, 2000 up to the date of the verdict on June 11, 2007. No award was made for future pain and suffering.
Both plaintiff and the City now seek to overturn the jury’s verdict as being against the weight of the evidence.
Motion by plaintiff for a new trial, pursuant to CPLR 4404, as to damages only, on the ground that the award of nominal damages by the jury was insufficient, and motion by defendants, pursuant to CPLR 4404, directing judgment notwithstanding the verdict are denied. There is no basis to disturb the jury’s verdict either as to liability or damages.
A verdict should not be set aside as against the weight of the evidence “unless the evidence so preponderates in favor of the [movant] that it could not have been reached upon any fair interpretation of the evidence” (Evers v Carroll, 17 AD3d 629, 631 [2d Dept 2005] [internal quotation marks omitted], quoting Schiskie v Fernan, 277 AD2d 441 [2d Dept 2000]). Indeed,
“[f]or a court to conclude that a jury verdict is unsupported by sufficient evidence as a matter of law, there must be no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial” (Taino v City of Yonkers, 43 AD3d 401, 402-403 [2d Dept Aug. 7, 2007] [internal quotation marks omitted]).
In addition, a jury award may only be set aside as being either inadequate or excessive upon a finding that it “deviates *165 materially from what would be reasonable compensation” (CPLR 5501 [c]; see Madsen v Merola, 288 AD2d 520 [3d Dept 2001]; Duncan v Hillebrandt, 239 AD2d 811 [3d Dept 1997]).
In deciding whether to set aside the verdict, the court should accord considerable deference to the jury’s findings of fact (see Evers v Carroll, supra).
In the instant case, the evidence adduced at trial supports the jury’s findings as to liability.
However, notwithstanding the jury’s finding of liability, plaintiff presented no medical proof of injury at trial by way of a physician or a psychiatrist, even though the bill of particulars asserted injuries to plaintiffs “physical and mental health.” No witnesses other than plaintiffs wife were called to testify as to plaintiffs claim that he suffered humiliation in the community. Plaintiff testified that he has lived in Chicago for the past two years, while his family still lives in Queens. Moreover, the summation to the jury of plaintiffs counsel was devoid of any comment as to what the amount of damages, past or future, should be. Therefore, it was not unreasonable, based upon the evidence adduced at trial, for the jury to have awarded plaintiff nominal, or de minimis, damages of $400 representing past pain and suffering based upon the fact that the evidence established that plaintiff was taken into custody but never placed under arrest and was detained for a total period of between two and three hours from the initial traffic stop to his release from custody at the 109th Precinct. The jury found no evidence to support an award for future pain and suffering. There was no testimony that plaintiff was ever physically mistreated, either at the scene or in the Precinct.
The cases cited by plaintiffs counsel in support of plaintiffs motion for a new trial as to damages on the ground that the jury’s award was insufficient are distinguishable from the facts of this case.
In Hallenbeck v City of Albany (99 AD2d 639 [3d Dept 1984]), plaintiff was arrested and three hours after the arrest was arraigned. The criminal charge was thereupon dismissed. The jury awarded plaintiff $25,000 in compensatory damages. However, the Appellate Division, Third Department, found that the damages award was excessive and ordered a new trial as to damages unless plaintiff stipulated to reduce the award to $10,000.
In Woodard v City of Albany (81 AD2d 947 [3d Dept 1981]), plaintiff was arrested and incarcerated for five hours. The jury *166 awarded $16,000 in damages for false arrest and imprisonment, but the Appellate Division, Third Department, found the award excessive and ordered a new trial unless plaintiff stipulated to reduce the award to $7,500.
In Guion v Associated Dry Goods Corp. (Lord & Taylor Div.) (56 AD2d 798 [1st Dept 1977]), plaintiff was arrested, booked, fingerprinted and detained for three hours before being released for a later court appearance. In that case, the Appellate Division, First Department, affirmed the jury’s award of $10,000 as not unreasonable. However, the jury’s award was based upon plaintiff having proved her damages which included not only mental suffering but also lost earnings.
Plaintiffs in the above cases were all actually arrested, booked, incarcerated and arraigned. The juries in those cases awarded compensatory damages in the thousands of dollars. There is no indication in the opinions in those cases that plaintiffs failed to establish any damages. Only in Hallenbeck did the court indicate that “there is no indication that [plaintiff] incurred any substantial physical or mental suffering” (99 AD2d at 640 [emphasis added]). Indeed, in Guión, plaintiff proved her damages.
In contrast, in the instant case, plaintiff was not formally arrested, booked, fingerprinted, incarcerated or arraigned. He was brought to the 109th Precinct where, according to Papadopoulos, the handcuffs were removed from his wrists. Upon verification of the authenticity of his driver’s license and identity, he was released. He was at the Precinct for only half an hour. Moreover, he not only failed to demonstrate that he sustained any substantial physical or mental injuries, or any economic damages representing lost earnings, but failed to establish any injuries whatsoever. Plaintiffs counsel did not even ask the jury to award any monetary sum of damages.
Therefore, the above cases cited by plaintiffs counsel do not compel this court to disturb the jury’s award of nominal damages.
Since the jury’s award of nominal damages was not unreasonable given plaintiff’s failure to demonstrate any injuries, it would be an improvident exercise of this court’s discretion to grant plaintiffs cross motion for legal fees.
Cross motion by plaintiff for an award of attorney’s fees, pursuant to 42 USC § 1988, is denied.
Pursuant to 42 USC § 1988 (b), “In any action or proceeding to enforce a provision of section[ ] . . . 1983 ... of this *167 title . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney’s fee as part of the costs.”
Plaintiff’s counsel contends that, since plaintiff was the prevailing party on his section 1983 claim against Officer Papadopoulos (plaintiffs section 1983 cause of action against the City was dismissed pursuant to the order of this court granting the City’s motion in limine seeking said relief), he is entitled to an award of legal fees, notwithstanding that the jury only awarded him $400 in damages, and that the only issue to be determined by the court is whether the fees being sought are reasonable. In its moving papers, plaintiff concedes that the jury’s award represents nominal damages. Defendant does not dispute that plaintiff was the prevailing party on his section 1983 claim against Papadopoulos.
Pursuant to section 1988, any sum the court, in the exercise of its discretion, elects to award as legal fees must be reasonable. In turn, what constitutes a reasonable award depends primarily upon the degree of plaintiffs success not only in terms of liability but also in terms of the level of damages awarded relative to the amount that was sought (see Farrar v Hobby, 506 US 103 [1992]). Thus, “the degree of plaintiffs overall success goes to the reasonableness [of the legal fees award]” (id. at 114) and thus, “the most critical factor is the degree of success obtained” (Hensley v Eekerhart, 461 US 424, 436 [1983]). “Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought” (Farrar, 506 US at 114 [internal quotation marks omitted], quoting Riverside v Rivera, 477 US 561, 585 [1986]).
Therefore, “[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief . . . the only reasonable fee is usually no fee at all” (Farrar, 506 US at 115).
Plaintiffs counsel later argues that, since plaintiff prevailed on the merits, the $400 award was intended by the jury as compensatory and not nominal damages and, therefore, he is entitled to reasonable legal fees. This court disagrees. Plaintiff sought compensatory damages in his complaint in the sum of $1,000,000. The jury’s award of $400 thus represented four ten-thousandths of the sum plaintiff was seeking. Even if the court were to compare the amount awarded to the amount of *168 plaintiffs pretrial settlement demand of $70,000, which would not have been considered by this court but for the fact that defendants in their affirmation in support of their motion invoke it, the award represents less than six ten-thousandths of plaintiffs demand.
Thus, the jury’s award of $400 cannot be construed as anything but a reflection of its intention to award merely nominal damages to convey the message to plaintiff that, although he may have prevailed as to liability, he failed to demonstrate that he suffered any meaningful compensable injury, which is borne out on this record. In fact, counsel, in his affirmation in support of plaintiffs motion to set aside the jury’s award of damages and for a new trial on the issue of damages, specifically stresses that “the jury award of $400.00 was clearly an award of nominal damages.”
Even were this court to treat the jury’s award as reflecting compensatory, rather than nominal, damages, such finding would not mandate a different result.
Though plaintiff prevailed on the merits of his section 1983 claim, his victory was a Pyrrhic one for his recovery was de minimis. “[A] plaintiffs victory is . . . ‘de minimis’ if there is a substantial difference between the damages sought and the damages awarded” and, therefore, the court may, in its discretion, deny legal fees even if there is an award of compensatory damages if it is insignificant or de minimis (Adams v Rivera, 13 F Supp 2d 550, 552, 553 [SD NY 1998] [“(p)laintiff sought nearly $1.5 million in compensatory and punitive damages and received only $1,080 in compensatory damages, an amount that cannot be considered ‘significant’ on any fair analysis of this case”]).
Plaintiff has not achieved a significant victory even though he prevailed in the sense that the jury’s finding of liability was an affirmation that his federal constitutional rights were violated. He prevailed against only Officer Papadopoulos. His section 1983 claim against the City was dismissed. Even as to Papadopoulos, plaintiff’s claim for punitive damages was dismissed during trial. Moreover, his attorney did not, in his summation, request the jury to award either past or future damages in any specific sum. Having walked away with only a partial victory and an award of only $400 against the $1,000,000 demand in his complaint and his $70,000 demand for purposes of settlement, the outcome of this litigation cannot be thought of as having conveyed to plaintiff any feeling of vindication.
*169 Thus, pursuant to the general rule enunciated in Farrar (at 115), namely, that when a party is awarded nominal damages, “the only reasonable fees is usually no fee at all,” it would be an improvident exercise of this court’s discretion to award any legal fees under the facts of this case.
This court agrees with plaintiff that an award of nominal damages does not necessarily bar an award of attorney’s fees. The federal courts recognize an exception to the Farrar rule under which legal fees may be awarded even where plaintiff recovered only nominal damages in cases where the litigation accomplished a “significant public purpose” (see Pino v Locascio, 101 F3d 235, 239 [2d Cir 1996]). However, the facts of the instant case do not support such an exception.
While it may be argued that the vindication of a federal constitutional right serves the important function of deterring civil rights violations and, thus, in and of itself, serves a significant public purpose, such is not the analysis under controlling federal precedent.
It is clearly established in the Second Circuit that an award of legal fees in a nominal damages case will be rare, being appropriate only in cases where the plaintiff “prevailed on a novel issue of law” “resulting] in ground-breaking conclusions of law” that “created a new rule of liability that served a significant public purpose” (id.). The instant matter was not a groundbreaking case involving novel issues of law, and it did not result in the introduction of a new rule of liability.
The Second Circuit has since reiterated its holding in Pino, emphasizing that the significant public purpose exception is very narrow, being limited only to groundbreaking cases, and even renaming the exception “the ground-breaking conclusions of law exception” (see McGrath v Toys “R” Us, Inc., 409 F3d 513, 523 [2d Cir 2005] [internal quotation marks omitted]). Although McGrath involved a violation of the New York City Human Rights Law and its companion legal fees provision, it provides guidance as to how section 1988 should be construed and applied by the courts of this state.
Plaintiffs in McGrath commenced an action in the Eastern District of New York pursuant to federal diversity jurisdiction seeking damages for discrimination against transsexuals in a public accommodation in violation of Administrative Code of the City of New York § 8-107.4 (a). The jury returned a verdict in favor of plaintiffs but awarded each nominal damages of $1 and no punitive damages. Plaintiffs thereafter petitioned the *170 district court for attorney’s fees pursuant to Administrative Code § 8-502 (f), which is essentially indistinguishable from section 1988 and which also provides for an award of legal fees to the prevailing party. The district court held that plaintiffs were entitled to legal fees because their case served a significant public purpose by being the first discrimination case involving transsexuals in a public accommodation both to proceed to trial and to succeed (see McGrath v Toys “R” Us, Inc., US Dist Ct, ED NY, No. 01 Civ. 3071, Oct. 16, 2002). Defendant appealed to the Second Circuit which, uncertain as to the applicability of Farrar and its significant public purpose exception to the legal fees provision of the New York City Human Rights Law, sought the guidance of the New York Court of Appeals (see McGrath v Toys “R” Us, Inc., 356 F3d 246 [2d Cir 2004]).
The New York Court of Appeals, answering the questions certified to it by the Second Circuit, held that it would apply Farrar to the legal fees provision of the City’s Human Rights Law, including its significant public purpose exception (McGrath v Toys “R” Us, Inc., 3 NY3d 421 [2004]).
The Court of Appeals also answered in the affirmative the question of whether the significant public purpose exception would apply in a case which was the first to result in a favorable verdict on a claim of unlawful discrimination against transsexuals in public accommodation, notwithstanding that there were already lower court cases finding in favor of plaintiffs in transsexual discrimination cases in the employment context.
The Court of Appeals reasoned that the mere fact that some lower courts had already ruled in favor of transsexuals in employment discrimination actions did not, as a matter of law, render insignificant the first verdict in favor of transsexuals in public accommodation discrimination actions. It further reasoned that a significant public purpose may be derived from a verdict in favor of a historically unrecognized group, as it could educate the public as to substantive rights and serve to communicate community condemnation of unlawful discrimination.
The dissent held that this certified question should be answered in the negative, reasoning that where only nominal damages are awarded, the only inquiry, pursuant to Farrar and Pino, is whether the case resulted in a groundbreaking conclusion of law. Since it was already recognized that transsexuals are a protected class, and, therefore, the case did not present a novel issue of groundbreaking proportions, the litigation did not serve a significant public purpose.
*171 The Second Circuit remanded the case to the district court for further factual development in view of the Court of Appeals’ expansive interpretation of the public purpose exception. The Second Circuit, however, made it unambiguously clear that the Court of Appeals’ broad view of the significant public purpose exception as such is applied to state civil rights laws is not in accord with the precedents of the Second Circuit with respect to federal law. The Second Circuit concluded that plaintiffs’ trial success did not satisfy the narrow “ground-breaking conclusions of law” exception articulated in Pino and agreed with the dissent in the Court of Appeals opinion that the case did not establish a groundbreaking legal theory, since the recognition of transsexuals as a protected class under the New York City Human Rights Law had already been recognized in the courts. “Under these circumstances, plaintiffs’ suit does not qualify as one of the ‘rare’ cases to satisfy the public purpose exception under this court’s precedents” (McGrath v Toys “R” Us, Inc., 409 F3d at 519).
In the instant case, the jury verdict in favor of plaintiff on his section 1983 claim did not establish a groundbreaking legal theory. Therefore, there is no basis in this case for an award of attorney’s fees under the public purpose, or groundbreaking conclusions of law, exception to Farrar. Moreover, the instant case would not qualify for an award of attorney’s fees even under the broader standard applied by the Court of Appeals to state legal fee provisions. The Court of Appeals in McGrath emphasized that the case before it involved a series of firsts. It was a case of first impression involving the first verdict applying the Human Rights Law to transsexuals in public accommodation. In addition, reasoned the Court of Appeals, the law had not been clear at the time that action was commenced that transsexuals were protected against discrimination in public accommodation. In contrast, the verdict in the instant case was not a “first” under any category.
The Second Circuit, in its conforming opinion, was careful to point out that the standard articulated by the Court of Appeals for applying the public purpose exception to state attorney’s fees provisions was much broader than the rule established in the Second Circuit with respect to comparable provisions under federal law and that even the fact pattern in McGrath was not sufficient to satisfy the narrow public purpose exception under the precedents established in that Circuit.
Federal precedent is clear that in a case in which only nominal damages are awarded, no legal fees pursuant to section 1988 *172 may be awarded, except in the rare instance where it is a truly groundbreaking case. This is not such a case.
Since the jury only awarded nominal, or, at best, de minimis, damages, and plaintiff failed to achieve any meaningful degree of “victory,” plaintiff, in the opinion of this court, is not entitled to an award of legal fees. Consequently, this court need not recite and analyze all 12 factors commonly articulated by the courts bearing upon the issue of reasonableness of an award of legal fees as enunciated by the Supreme Court in Hensley v Eckerhart (461 US at 430 n 3; see Farrar, 506 US at 115 [“[hjaving considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness ... or multiplying ‘the number of hours reasonably expended . . . by a reasonable hourly rate’ ”]).
“[F]ee awards under § 1988 were never intended to ‘ “produce windfalls to attorneys” ’ ” (Farrar, 506 US at 115). In retrospect, this court has formed the belief that counsel for plaintiff was litigating this matter primarily, if not solely, for the purpose of recovering legal fees from defendants postverdict and that securing a significant compensatory award for his client may have been merely a secondary consideration. This impression was formed, in part, by the fact that counsel put on virtually no damages case. He did not present any medical evidence of physical or psychological injury as alleged in the complaint, called no witnesses besides plaintiff and his wife to corroborate his claim of damage to his reputation in the community and did not address past or future damages in his summation, failing to even ask the jury to return a verdict of damages in any monetary amount. This almost complete lack of advocacy on behalf of his client with respect to establishing damages contrasts dramatically with the vigor and thoroughness of his motion seeking legal fees for himself, in which he submits a bill 17 pages in length consisting of 275 separate items of charges.
This court also finds it odd that plaintiffs trial counsel did not submit his own affirmation in support of either the motion for a new trial as to damages or the motion for legal fees.
Counsel has submitted bills for legal services rendered in the sum of $55,767.12. This sum also includes a bill for $5,445 representing his fee for making the instant motion for legal fees.
Counsel’s attempt to recover legal fees for himself of such magnitude while his client was awarded such a nominal amount *173 is unseemly and so disproportionate as to shock the conscience of the court.
Accordingly, the motions and cross motion are denied.