**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 16 1999**

**PATRICK FISHER**
**Clerk**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

———————————————

ANN BRANDAU,

      Plaintiff - Appellee,

v.

STATE OF KANSAS,

      Defendant - Appellant.

No. 97-3290

—————————————————

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 96-2414-KHV)**

———————————————

John R. Dowell, Assistant Attorney General (Carla J. Stovall, Kansas Attorney General, with him on the brief), Topeka, Kansas, for Defendant-Appellant.

Stephen C. Thornberry (Martin M. Meyers with him on the brief), Kansas City, Missouri, for Plaintiff-Appellee.

—————————————————

Before **BALDOCK**, **McKAY**, and **HENRY**, Circuit Judges.

—————————————————

**McKAY**, Circuit Judge.

———————————————

Plaintiff Ann Brandau, a former employee of the State of Kansas, sued the State for hostile work environment and quid pro quo sexual harassment, retaliation, and constructive discharge under Title VII, 42 U.S.C. § 2000e-2(a)(1) to 2000e-17. She worked in the Adult Probation Division for the Twenty-Ninth Judicial District of Wyandotte County, Kansas, and she sought twenty-one months' back-pay and $50,000 in compensatory damages. Plaintiff prevailed on her hostile work environment sexual harassment claim, and the jury awarded her nominal damages of $1.00. The district court then found that Plaintiff was the prevailing party and awarded her attorney's fees and expenses under 42 U.S.C. § 2000e-5(k) in the amount of $41,598.13. Defendant appeals the district court's decision to award attorney's fees and expenses.[1] We exercise jurisdiction under 28 U.S.C. § 1291.

We review an award of attorney's fees for abuse of discretion. See Berry v. Stevinson Chevrolet, 74 F.3d 980, 989 (10th Cir. 1996). We will reverse the

---

[1]It is not clear whether Defendant challenges the analysis underlying the amount of the fee award. After considering several factors including the lodestar amount, "the competent trial presentation and excellent briefing" of Plaintiff's attorneys, and "the reasonable amount of time expended and requested by counsel . . . in preparing and trying the case," the court reduced the lodestar amount by ten percent and awarded Plaintiff $40,398.75 in attorney's fees and $1,199.38 in expenses. Appellant's App. at 82-83. To the extent that Defendant does challenge the amount of the fee award, we believe that the court's analysis was proper. Further, because Defendant apparently did not object to Plaintiff's expenses, see id. at 83, we do not review the amount awarded.

district court's factual findings only if we have "'a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting McEwen v. City of Norman, Okla., 926 F.2d 1539, 1553-54 (10th Cir. 1991)). However, we review de novo the district court's legal analysis underpinning the award. See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1231 (10th Cir. 1997).

Plaintiff and Defendant both rely on Farrar v. Hobby, 506 U.S. 103 (1992), to support their claims regarding the award of fees and costs. In Farrar, the Supreme Court considered the reasonableness of awarding attorney's fees under 42 U.S.C. § 1988 to a party who won only nominal damages in a 42 U.S.C. § 1983 action. See id. at 114. The Court denied attorney's fees to a plaintiff who had sought $17 million from six defendants and, after more than a decade of litigation and two appeals, was awarded damages of only $1.00 from one defendant. See id. Writing for the majority, Justice Thomas observed that Mr. Farrar's "litigation accomplished little beyond giving [him] 'the moral satisfaction of knowing that a federal court concluded that [his] rights had been violated' in some unspecified way." Id. (citation omitted). He concluded that a plaintiff who seeks compensatory damages but achieves such limited success is often the type of prevailing party who "should receive no attorney's fees at all." Id. at 115.

-3-

Justice O'Connor's concurring opinion in Farrar established a three-part analysis "to determine whether a prevailing party achieved enough success to be entitled to an award of attorney's fees." Phelps v. Hamilton, 120 F.3d 1126, 1131 (10th Cir. 1997) (adopting Justice O'Connor's framework); see Farrar, 506 U.S. at 121-22 (O'Connor, J., concurring). This framework requires the district court to determine the "relevant indicia of success" by examining: (1) the difference between the judgment recovered and the judgment sought; (2) "the significance of the legal issue on which the plaintiff prevailed"; and (3) "the public purpose served" by the litigation. Farrar, 506 U.S. at 122 (O'Connor, J., concurring); see also Phelps, 120 F.3d at 1131. In light of these considerations, Justice O'Connor concluded that, because Mr. Farrar's case was protracted, demanded $17 million from six defendants, and completely failed to advance any public good, it was "simply not the type of victory that merits an award of attorney's fees." Farrar, 506 U.S. at 116 (O'Connor, J., concurring). She therefore agreed with the Court that "the appropriate fee . . . [was] no fee at all." Id. at 122 (O'Connor, J., concurring). Nevertheless, as Justice White, joined by three of his colleagues, noted in Farrar, the Court did not hold that recovery of nominal damages can never support the award of attorney's fees. See id. at 124 (White, J., concurring in part and dissenting in part).

Because Justice O'Connor's framework elaborates on the parameters of a

district court's discretion to award attorney's fees to a prevailing plaintiff who recovers only nominal damages, we followed those parameters in Phelps. See Phelps, 120 F.3d at 1131. Additionally, in accordance with Justice White's observation in Farrar, we emphasized that the application of the O'Connor factors did not undermine the general rule that prevailing parties should recover attorney's fees "'unless special circumstances would render such an award unjust.'" Id. (quoting Blanchard v. Bergeron, 489 U.S. 87, 89 n.1 (1989)).

In this case, the district court applied precisely the analysis we adopted in Phelps. Analyzing the degree of success obtained, the first factor under Farrar, the court found that, despite Plaintiff's limited monetary recovery, her victory was not merely technical or de minimis; instead, the jury's "verdict vindicated the violation of her civil rights." Appellant's App. at 80. The court determined that the difference between the judgment recovered and the recovery sought was significantly distinct from the corresponding difference in Farrar: Plaintiff's claims for damages were not extravagant–she sought only back pay for twenty-one months and $50,000 in non-economic damages–while Mr. Farrar sought damages of $17 million. The court also relied on the fact that, unlike Mr. Farrar's litigation which was drawn out over ten years and two appeals, Plaintiff's

litigation was not protracted.[2]  Citing this court's decision in <u>Koopman v. Water District No. 1</u>, 41 F.3d 1417, 1421 (10th Cir. 1994), the court determined that Plaintiff's nominal damage award did not preclude an award of fees.

With respect to the second <u>Farrar</u> factor, the significance of the legal issue on which the plaintiff prevailed, the district court determined that Plaintiff succeeded on her primary claim, sexual harassment.  <u>See</u> Appellant's App. at 81.  Therefore, although she lost her retaliation and constructive discharge claims, Plaintiff "succeeded on a 'significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.'"  <u>Id.</u> (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)).

Finally, in examining the third factor, the public purpose served by the plaintiff's success, the district court weighed whether "the judgment deters future lawless conduct as opposed to merely 'occupying the time and energy of counsel, court, and client.'"  <u>Id.</u> (quoting <u>Phelps</u>, 120 F.3d at 1132).  The court found that Plaintiff presented "evidence that supervisory personnel in [her] department had little training in how to investigate sexual harassment charges, and . . . that, in

---

[2]Plaintiff filed her complaint in September 1996 and her amended complaint in February 1997, and the district court's order which is the subject of this appeal was filed in September 1997.  An additional factor not expressly relied on by the district court distinguishes this case from <u>Farrar</u>:  Plaintiff had an enforceable judgment against the sole defendant named in her amended complaint, whereas Mr. Farrar's judgment was enforceable against only one of the six named defendants.

this case, the department's policy on sexual harassment was not followed." Id. at 81-82. Thus, the court found that, "[a]s a result of this case, defendant is on notice that it must educate its employees about sexual harassment in the workplace and must promptly investigate any such claims," and "the present and future employees of both the Wyandotte County Adult Probation Division, and of the State, benefit by having their rights affirmed."[3] Id. at 82. In short, the court found that while Plaintiff's litigation did not achieve significant monetary benefits, it served a larger public purpose. Although Defendant disputes whether such a benefit in fact occurred and argues that any benefit achieved is speculative, "the [d]istrict [c]ourt was free, within the bounds of the clearly erroneous standard, to find that the lawsuit did benefit" the employees of Kansas and Wyandotte County. Wilcox v. City of Reno, 42 F.3d 550, 556 (9th Cir. 1994). Because we do not have "'a definite and firm conviction that the lower court

_____

[3]The court also noted (in a footnote) that, at an informal meeting between jurors and counsel for both parties immediately following the verdict, "jurors gave the State of Kansas a loud and clear message that it had failed to properly train and educate the chain of command in the Wyandotte County courthouse about how to prevent sexual harassment and how to process sexual harassment grievances." Appellant's App. at 82 n.3. We do not believe that this off-the-record conversation between jurors and counsel is definitive or necessary to support the court's factual finding that Plaintiff's litigation served a public purpose. Nonetheless, we note that the court's factual finding that Defendant's failure to instruct the chain of command about sexual harassment prevention and grievance procedures was communicated to the State of Kansas is not clearly erroneous because it is supported by evidence presented by Plaintiff at trial.

made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances,'" Moothart, 21 F.3d at 1504 (citation omitted), we do not reverse the district court's factual findings.

Additionally, based on our review of the record and precedent, we do not believe that the district court's legal analysis underlying the award was erroneous. See Roe, 124 F.3d at 1231. The court clearly and carefully applied the rule of Farrar and Justice O'Connor's three-part analysis which we adopted in Phelps. The court also carefully followed our decision in Koopman in which we held that the district court erred in denying the plaintiff's motion for attorney's fees because "the present and future employees of the [Water] District benefit[ted] by having their rights affirmed," even though Mr. Koopman received only a nominal award. Koopman, 41 F.3d at 1421. Unlike Mr. Farrar's victory, Mr. Koopman's victory "sen[t] an important message to the [Water] District . . . that it must provide its employees with constitutionally adequate pretermination and post-termination hearings." Id. Although the jury's verdict in this case did not order Kansas or Wyandotte County to change its policies, according to Koopman, circuit precedent does not require the judgment to order a policy change. See generally id. Nor does precedent require the legal victory to be novel to constitute a significant degree of success. Cf. Roe, 124 F.3d at 1233 (stating that novelty of issue does not affect availability of fee award); see also Blum v.

Stenson, 465 U.S. 886, 898-99 (1984) (indicating that novelty of issue should be reflected in lodestar figure).

Instead, Koopman instructs us that what is controlling is Plaintiff's vindication of her civil rights and of important rights of her co-workers, even if she sought only a modest amount of damages. See Koopman, 41 F.3d at 1421; see also Farrar, 506 U.S. at 122 (O'Connor, J., concurring). Plaintiff's victory put Kansas, or at least Wyandotte County, on notice that it should reform its sexual harassment policies and that it is proceeding at its peril if it declines to do so. These results–vindicating rights secured by Title VII and providing a broad constitutional benefit to other employees of Wyandotte County–are in the interests of the public and are exactly what Congress intended to encourage under Title VII. Cf. Gudenkauf v. Stauffer Communications, Inc., 158 F.3d 1074, 1081 (10th Cir. 1998) (holding that a verdict for a plaintiff in a mixed-motive case constitutes a victory on a significant legal issue that serves a public purpose, "notwithstanding the fact that a plaintiff recovers no damages"). Moreover, Defendant pointed to no special circumstances that would render this award unjust. Accordingly, the district court's application of Farrar to award attorney's fees in this case adheres to Supreme Court and circuit precedent, enforces Congressional intent, and encourages the vindication of civil rights. "It does not appear to us [that] this is the kind of case Farrar was intended to discourage

attorneys from taking." <u>Koopman</u>, 41 F.3d at 1421.

We conclude that the district court appropriately evaluated the reasonableness of a fee award to Plaintiff in light of controlling case law. We also hold that the court did not abuse its discretion in awarding to Plaintiff $41,598.13 in fees and expenses. The district court's award is AFFIRMED.

No. 97-3290, Brandau v. State of Kansas

**BALDOCK**, Circuit Judge, dissenting.


Because the jury awarded Plaintiff Brandau one dollar on her sexual

harassment claim, she is a "prevailing party" entitled to move for an award of

attorney's fees against Defendant under 42 U.S.C. § 2000e-5(k).  Farrar v. Hobby,

506 U.S. 103, 112 (1992).  The amount of the jury's damage award does not

affect Plaintiff's status as a "prevailing party."  Rather, it bears on the

reasonableness of the district court's $40,000 fee award.  Farrar instructs us that

"'the most critical factor' in determining the reasonableness of a fee award 'is the

degree of success obtained.'"  Id. at 114 (quoting Hensley v. Eckerhart, 461 U.S.

424, 436 (1983)) (emphasis added).  Farrar leaves no doubt as to what normally

constitutes a reasonable fee for a party securing only nominal damages where, as

here, the recovery of damages was the sole purpose of the litigation:

> In a civil rights suit for damages . . . the award of nominal damages
> . . . highlights the plaintiff's failure to prove actual, compensable
> injury. . . .  When a plaintiff recovers only nominal damages because
> of her failure to prove an essential element of her claim for monetary
> relief, . . . the only reasonable fee is usually no fee at all.

506 U.S. at 115 (emphasis added).

This court's reliance upon "the general rule that prevailing parties should

recover attorney's fees," even where that party achieves nothing more than a

moral victory through an award of nominal damages, is wrong.  Farrar says

exactly the opposite:  Where a jury awards a prevailing party nominal damages

and nothing more, an award of attorney's fees is the exception, not the general

rule.  By discounting <u>Farrar</u>'s controlling principles, the district court clearly

"exceeded the bounds of permissible choice," under the circumstances of this

case.  Because this court's opinion, like the district court's, is contrary to <u>Farrar</u>, I

dissent.[1]

Relying on Justice O'Connor's concurring opinion in <u>Farrar</u>, 506 U.S. at

116-22 (O'Connor, J., concurring), which notably no other member of the Court

chose to join, this court makes much about the district court's conclusions that the

jury's verdict "vindicated the violation of [Plaintiff's] civil rights," and "served a

larger public purpose."  Such vague and indeterminate postulations may be made

in virtually all civil rights litigation where plaintiff is a prevailing party by virtue

of a nominal damage award.  The proper analysis in this case, however, even

under Justice O'Connor's approach, is straightforward: The ratio between the

damages sought and recovered was 50,000 to 1; the sole legal issue on which

Plaintiff prevailed was unremarkable; and the public benefit from the litigation

---

[1] In <u>Gudenkauf v. Stauffer Communications, Inc.</u>, 158 F.3d 1074, 1078 (10th Cir. 1998), we incorrectly referred to <u>Farrar</u> as a plurality opinion.  Justice Thomas' opinion was joined by four other justices, (including Justice O'Connor who also wrote separately), making it the opinion of the Supreme Court, and thus binding upon this court.

was uncertain at best, negligible at worst. See id. at 121-22 (O'Connor, J., concurring). If this is not a case in which Farrar precludes an award of attorney's fees, I am hard pressed to hypothesize one.

As the second circuit has noted: "The vast majority of civil rights litigation does not result in ground-breaking conclusions of law, and therefore will only be appropriate candidates for fee awards if a plaintiff recovers some significant measure of damages or other meaningful relief." Pino v. Locascio, 101 F.3d 235, 239 (2d Cir. 1996). "[N]ot every tangential ramification of civil rights litigation ipso facto confers a benefit on society." Id. Yet after today, the general rule in the Tenth Circuit appears to be that a one dollar nominal damage award alone justifies a $40,000 fee award.

Any tangible benefit which might justify the district court's fee award is "utterly lacking" in this case. See Romberg v. Nichols, 48 F.3d 453, 455 (9th Cir. 1995). Plaintiff obtained no meaningful relief–damage award or otherwise. Thus, this court's opinion finds little support in decisions like Case v. Unified School Dist. No. 233, 157 F.3d 1243 (10th Cir. 1998), and Phelps v. Hamilton, 120 F.3d 1126 (10th Cir.1997), where plaintiffs were successful in obtaining prospective relief–a very tangible benefit. The analysis the court undertook in those cases is simply inappropriate for cases such as this where a civil rights plaintiff achieves little or nothing. Moreover, although the district court reasoned

that the evidence showed Defendant's response to sexual harassment in the workplace was inadequate, the fact remains that the "enforceable judgment" requires Defendant to do nothing more than pay Plaintiff $1.00. As Justice O'Connor noted in Farrar: "Chimerical accomplishments are simply not the kind of legal change that Congress sought to promote in the fee statute." 506 U.S. at 119 (O'Connor, J., concurring).

The issue in this case is straightforward and before today easily resolved: Does a district court abuse its discretion in awarding attorney's fees to a civil rights plaintiff who recovers only nominal damages and nothing more? In Farrar, the Supreme Court answered the question with a resounding yes. As an inferior federal court, we must follow its dictates. While Farrar did not establish a per se rule that a civil rights plaintiff recovering only nominal damages can never receive an attorney's fee award, the Court's opinion clearly indicates that a fee award in such a case will be rare. See Pino, 101 F.3d at 238. Plaintiff Brandau's lawsuit is not the rare exception. Because we are bound by Farrar, I would hold that the district court abused its discretion, and reverse its award of attorney's fees.