OPINION OF THE COURT
Terry Jane Ruderman, J.
The plaintiff brought this action in August 2007 against his former wife for damages as a result of a breach of a confidentiality agreement contained in a March 20, 2005 “so-ordered” stipulation of settlement of a matrimonial action. (Motion sequence No. 40, exhibit A.) The stipulation of settlement provided that in the event of a “material breach” of the confidentiality agreement, the party committing the breach would be liable for “actual damages” to the other party. Further, should a party be found to have committed a material breach, that party would be additionally liable for “all expenses, costs and reasonable attorney’s fees.” (Motion sequence No. 40, exhibit A, art III, para 7.)
In 2006, the Village Voice published an article alleging that the plaintiff had committed incest with his adult daughter from a relationship prior to his marriage with the defendant. Similar articles appeared in the New York Post. Subsequently, in 2007, the Village Voice published a follow-up article entitled Daddy’s Dog, in which the defendant was interviewed, and confirmed her understanding of the truth of the allegations of incest. The allegations made by the defendant in the 2007 Daddy’s Dog article formed the basis of the present action for breach of the confidentiality agreement.
On November 19, 2009, the defendant made a written offer to liquidate damages under CPLR 3220, agreeing to judgment in the amount of $250,000 “with costs accrued thus far in this *1032 action as defined in CPLR Section 3220, if the Defendant’s Defenses fail.” (Motion sequence No. 40, exhibit B.) The offer was not accepted by the plaintiff.
After nine years of litigation, the case was assigned to this court for trial. At the commencement of the trial, after the jury had been selected, the defendant conceded liability on the record. (Motion sequence No. 40, exhibit L.) Defense counsel stipulated that the defendant had “materially breached” article III of the stipulation of settlement, “entitling Mr. McMahan to counsel fees, which is $1,000,000.00 as of today’s date.” (Motion sequence No. 40, exhibit L at 2.) Further, defendant agreed to liability for additional attorney’s fees, stating, “And we’re consenting to $1 million as of today. Going forward, he [plaintiff] will incur future counsel fees under that particular paragraph, which will be dealt with when he produces invoices, and when we go forward on the issue of damages.” (Motion sequence No. 40, exhibit L at 3.) Defense counsel clarified that he had consented to fees under “Paragraph 7,” and that he would withdraw certain appeals that were pending concerning attorney’s fees. (Motion sequence No. 40, exhibit L at 4.) Neither party mentioned the existence of the offer under CPLR 3220.
At trial, plaintiff sought to establish that the Daddy’s Dog article damaged the plaintiff, who was a general partner and chief executive officer of McMahan Securities, and the president and chief executive officer of Argent Funds Group (Argent). Plaintiff contended that an entity known as Access International Advisors (AIA) stopped marketing the plaintiff’s investment funds after the publication of Daddy’s Dog, resulting in the loss of millions of dollars in fees. (Trial tr, motion sequence No. 42, exhibit A at 40-43.) In his opening statement, plaintiff’s counsel conceded that the allegations of incest had surfaced and been published in 2006, but nevertheless argued that these articles were “different” because they did not contain pictures of the defendant or statements attributed to her. (Trial tr, motion sequence No. 42, exhibit A at 43.) Defendant’s counsel countered in his opening that the plaintiff would not be able to establish that the Daddy’s Dog article alone, as opposed to the other numerous publications which contained allegations of incest, caused plaintiff’s alleged damages. (Trial tr, motion sequence No. 42, exhibit A at 47-49.)
At trial, defendant admitted into evidence New York Post articles dated September 28, September 29, and October 1, *1033 2006, which contained numerous photographs and detailed allegations of the alleged incestuous relationship between the plaintiff and his daughter. (Motion sequence No. 42, affirmation in opposition, exhibit A.)*
The jury rejected plaintiff’s arguments that the 2007 Daddy’s Dog article had caused him to incur actual damages in the amount of $6,173,162 relating to McMahan Securities, and $3,672,000 relating to Argent Funds. Instead, the jury found that the plaintiff had not sustained any damages.
Defendant’s Motion for Attorney’s Fees and Other Expenses (Motion Sequence No. 40)
Defendant moves to preclude legal fees on the ground that this action was baseless, and to recover legal fees as “expenses” under CPLR 3220. The court rejects defendant’s arguments that plaintiff is not entitled to any additional attorney’s fees because no actual damages were awarded. While the actual results may be considered in determining the amount of reasonable attorney’s fees, this action was not frivolous, or so lacking in merit as to suggest that no award of fees is warranted. Indeed, the defendant freely stipulated to pay attorney’s fees in the amount of $1 million to the extent that fees had accrued in the action, up to the time of the commencement of the trial. Nor did defendant suggest , at that time that additional fees were not warranted.
Defendant made a written offer to liquidate damages under CPLR 3220, agreeing to the entry of judgment against her in the amount of $250,000. This offer was rejected. Defendant accordingly argues that the plaintiff is liable for the defendant’s expenses “necessarily incurred . . . for trying the issue of damages from the time of the offer.” (CPLR 3220; see Weinstein-Korn-Miller, NY Civ Prac ¶ 3220.03; Abreu v Barkin & Assoc. Realty, Inc., 115 AD3d 624 [1st Dept 2014] [granting a hearing on attorney’s fees where plaintiff failed to obtain a more favorable judgment than the offer].) Plaintiff maintains that because plaintiff recovered at least $1,000,000 in attorney’s fees, which will eventually be reduced to a judgment, the plaintiff in fact recovered more than the amount which was offered under CPLR 3220.
CPLR 3220, entitled “Offer to liquidate damages conditionally,” provides as follows:
*1034 “At any time not later than ten days before trial, any party against whom a cause of action based upon contract, express or implied, is asserted may serve upon the claimant a written offer to allow judgment to be taken against him for a sum therein specified, with costs then accrued, if the party against whom the claim is asserted fails in his defense. If within ten days thereafter the claimant serves a written notice that he accepts the offer, and damages are awarded to him on the trial, they shall be assessed in the sum specified in the offer. If the offer is not so accepted and the claimant fails to obtain a more favorable judgment, he shall pay the expenses necessarily incurred by the party against whom the claim is asserted, for trying the issue of damages from the time of the offer. The expenses shall be ascertained by the judge or referee before whom the case is tried. An offer under this rule shall not be made known to the jury.”
Defendant’s offer included “costs then accrued,” but was silent as to whether attorney’s fees were included. The statute itself does not indicate whether attorney’s fees are included within “costs.” The First Department has held that the “expenses” to be recovered by the defendant, where plaintiff does not obtain a more favorable judgment, includes attorney’s fees, but this holding does not address the issue of whether “costs” include attorney’s fees. (Abreu v Barkin & Assoc. Realty, Inc., 115 AD3d 624 [1st Dept 2014].) This court has not located any New York case indicating whether the initial offer under CPLR 3220 should be deemed to include attorney’s fees.
“It is well settled in New York that a prevailing party may not recover attorneys’ fees from the losing party except where authorized by statute, agreement or court rule.” (U.S. Underwriters Ins. Co. v City Club Hotel, LLC, 3 NY3d 592, 597 [2004] [citations omitted]; RMP Capital Corp. v Victory Jet, LLC, 139 AD3d 836 [2d Dept 2016].) Here, the “damages” which plaintiff sought to recover were the alleged “actual damages” resulting from the “material breach” of the matrimonial agreement. (Motion sequence No. 40, exhibit A, art III, para 6.) Additionally, attorney’s fees were recoverable under the agreement. (Motion sequence No. 40, exhibit A, art III, para 6.)
While New York law is unclear as to whether an offer to liquidate damages includes attorney’s fees, federal court *1035 proceedings provide some guidance as to (1) whether costs include attorney’s fees, and (2) the proper mechanism for assessing whether the plaintiff’s recovery is more favorable than the offer. (Marek v Chesny, 473 US 1 [1985]; LaPierre v City of Lawrence, 819 F3d 558, 562, n 7 [1st Cir 2016] [offers of judgment under Federal Rules of Civil Procedure rule 68, attorney’s fees are treated as a subset of “costs”].)
In the seminal case of Marek v Chesny, the United States Supreme Court interpreted Federal Rules of Civil Procedure rule 68, which, as then written, allowed a defendant, up to 10 days before the trial began, to “serve upon the adverse party an offer to allow judgment to be taken against him for the money or property or to the effect specified in his offer, with costs then accrued.” Federal Rules of Civil Procedure rule 68 further provided that if the offer was rejected and “the judgment finally obtained by the offeree [was] not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.”
In Marek v Chesny, the United States Supreme Court reasoned that the term “costs” in rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority, and that all costs properly award-able in an action are to be considered within the scope of rule 68 “costs.” Pursuant to the Civil Rights Attorney’s Fees Awards Act of 1976, a prevailing party in a 42 USC § 1983 action may be awarded attorney’s fees “as part of the costs.” Since Congress expressly included attorney’s fees as “costs” available to a plaintiff in a section 1983 suit, attorney’s fees were therefore subject to the cost-shifting provision of rule 68.
Here, by analogy, attorney’s fees are recoverable, not by statute, but by agreement. Just as the United States Supreme Court reasoned that the term “costs” in rule 68 was intended to refer to all costs properly awardable under the relevant substantive statute or other authority, this court finds that the term “costs” in CPLR 3220 includes attorney’s fees which are properly recoverable in the action by agreement of the parties.
In Marek, an offer was made to settle the plaintiff’s civil rights suit under 42 USC § 1983 inclusive of attorney’s fees in an unallocated amount of $100,000. The plaintiff refused that offer. After trial, the plaintiff recovered the following sums— $60,000 in damages; $32,000 in preoffer costs; and, $139,692.47 in claimed postoffer costs.
With respect to the mechanism by which the plaintiff’s success or lack of success is to be calculated, in Marek, the United *1036 States Supreme Court rejected the argument that the plaintiff’s recovery after trial of $231,692.47 exceeded the $100,000 offer. The Court so held because the bulk of the recovery was post-offer attorney’s fees. The Court reasoned that “postoffer costs merely offset part of the expense of continuing the litigation to trial, and should not be included in the calculus.” (473 US at 7.) Thus, the Court compared (1) the amount of actual damages (i.e., $60,000) plus costs inclusive of attorney’s fees at the time of the offer ($32,000), making a total of $92,000, with (2) the amount of the offer (i.e., $100,000), and concluded that the final judgment was not more favorable than the offer ($92,000 < $100,000).
The calculus applied in Marek v Chesny provides guidance in the instant case. Here, the defendant consented to judgment in the unallocated amount of $250,000, inclusive of costs. As attorney’s fees are recoverable in this contract action, the offer must be deemed to have included an amount for attorney’s fees then accrued, as an element of costs. Here, the plaintiff recovered only attorney’s fees (in an amount of $1,000,000, plus additional amounts to be determined), plus nominal damages, and failed to recover any actual damages. Plaintiff argues that the recovery of $1,000,000 in attorney’s fees exceeds the offer of $250,000. But as in Marek v Chesny, postoffer costs, inclusive of attorney’s fees, are not properly part of the calculation. Following the logic of Marek, the offer of judgment under CPLR 3220 included all damages, costs, and attorney’s fees which had accrued at the time of the offer, and would not have included attorney’s fees which would accrue from the time of the offer until the time of the ultimate judgment. This construction accords with CPLR 3220’s specific mandate that the offer includes “costs then accrued,” (CPLR 3220 [emphasis added].)
This court accordingly holds that when attorney’s fees are recoverable by agreement, and the offer of judgment is silent as to the treatment of attorney’s fees, the offer must be deemed to include such fees, as an element of costs. Further, whether the plaintiff obtains a more favorable judgment must be determined by comparing the total amount of the offer with the total amount of the recovery, plus costs (inclusive of attorney’s fees) “then accrued,” meaning, as calculated at the time of the offer. Thus, the offer — here, in an amount of $250,000 — must be compared with the nominal damages ultimately recovered, plus “costs then accrued,” plus attorney’s fees “then accrued.”
*1037 In order to determine whether plaintiff obtained a more favorable judgment, the court will need to determine the amount of costs and attorney’s fees accrued at the time of the offer. If the fees and costs, plus $1 in nominal damages, accrued at the time of the offer, do not exceed $250,000, then the plaintiff failed to obtain a more favorable judgment. In that event, plaintiff is obligated to pay the “the expenses necessarily incurred by the [defendant] for trying the issue of damages from the time of the offer.” (CPLR 3220.) If the fees and costs as of the time of the offer, plus $1 in nominal damages, exceed $250,000, then the plaintiff is considered to have obtained a “more favorable judgment.”
The parties shall present evidence on this issue at a hearing. (See the discussion, infra, in connection with motion sequence No. 41.)
Plaintiffs Motion for Attorney’s Fees (Motion Sequence No. 41)
Plaintiff’s attorneys seek $255,428.75 in attorney’s fees subsequent to the stipulation at the commencement of the trial. They concede that 10 entries totaling $12,330 relate to other actions and are not properly recoverable in this action. (Motion sequence No. 41, affirmation in further support, para 16.)
As noted in Degregorio v Richmond Italian Pavillion, Inc. (90 AD3d 807, 809 [2d Dept 2011]):
“However, even where a party establishes that it is a prevailing party, ‘the requested fee must also be reasonable’ (Pino v Locascio, 101 F3d 235, 237 [1996]). A court is vested with ‘discretion’ in determining the appropriate amount of fees (42 USC § 2000a-3 [a]; see Administrative Code of City of NY § 8-502 [f]; see Hensley v Eckerhart, 461 US 424, 453-454 [1983]). ‘The most important factor in determining the reasonableness of a fee is the degree of success obtained’ (Pino v Locascio, 101 F3d at 237; see Farrar v Hobby, 506 US at 114). The United States Supreme Court has noted that ‘[i]n some circumstances, even a plaintiff who formally “prevails” . . . should receive no attorney’s fees at all’ (Farrar v Hobby, 506 US at 115). Moreover, ‘fee awards are not appropriate where, having failed to capture compensatory or punitive damages, a plaintiff wins only “the moral satisfaction of knowing that a . . . court concluded that [their] rights had been violated” ’ (Pino v Locascio, 101 F3d at 238, quoting Farrar v Hobby, 506 US at *1038 114). Under the circumstances of this case, the Supreme Court providently exercised its discretion in denying the plaintiffs motion for an award of an attorney’s fee (see Farrar v Hobby, 506 US at 115; Pino v Locascio, 101 F3d at 238; Jian Ren Chen v City of New York, 64 AD3d 542, 543 [2009]; Matter of Shah v DeBuono, 257 AD2d 256, 260 [1999]).”
In the instant case, a determination cannot be made based merely on the submitted invoices. (See RMP Capital Corp. v Victory Jet, LLC, 139 AD3d 836 [2d Dept 2016] [in contract action, Supreme Court’s across-the-board 25% reduction in the hours expended by the plaintiff’s attorneys on the case, due to the use of block billing, including vague and nonspecific billing entries, and the nature of this lawsuit, was a provident exercise of discretion].) A hearing is required to consider evidence on all of the foregoing factors in order to determine the necessity and reasonableness of the fee sought.
Plaintiff’s motion also seeks an award of $1 as nominal damages. Since this is a contract action, and the fact of a material breach was admitted by stipulation, nominal damages are awarded in the amount of $1. (Ross v Sherman, 95 AD3d 1100 [2d Dept 2012] [Supreme Court properly awarded the plaintiffs nominal damages on their cause of action alleging breach of contract].)
Plaintiff’s Motion to Set Aside the Verdict (Motion Sequence No. 42)
Plaintiff seeks to set aside the verdict as against the weight of the evidence. “A jury verdict in favor of a defendant may not be set aside as being against the weight of the evidence unless the jury could not have reached the verdict on any fair interpretation of the evidence.” (Landau v Rappaport, 306 AD2d 446, 446-447 [2d Dept 2003]; Serrano v Rachel’s Car Serv., Inc., 142 AD3d 596 [2d Dept 2016]; Ahmed v Port Auth. of N.Y. & N.J., 131 AD3d 493, 495 [2d Dept 2015].) “It is for the jury to make determinations as to the credibility of the witnesses, and great deference in this regard is accorded to the jury, which had the opportunity to see and hear the witnesses.” (Exarhouleas v Green 317 Madison, LLC, 46 AD3d 854, 855 [2d Dept 2007].) “The jury’s resolution of the credibility of conflicting expert witnesses is entitled to great weight, as it is the jury that had the opportunity to observe and hear the experts (see Mancusi v Setzen, 73 AD3d at 993).” (Reitzel v Hale, 128 AD3d 1045, 1045 [2d Dept 2015].)
*1039 In the present case, plaintiff relies heavily on the testimony of Patricia Ransom, an employee of McMahan Securities and Argent, who received an email dated July 22, 2008, from Vasillis Mouratoff, also an employee of one of plaintiff’s companies, that investment opportunities were being lost due to “Argent’s PR problems.” (Motion sequence No. 42, affirmation in opposition, exhibit C.) Contrary to plaintiff’s arguments, the jury was free to reject this testimony as supporting plaintiff’s theory that the Daddy’s Dog article, but not the other numerous Internet posts and publications concerning the allegations of incest, caused plaintiff’s losses. The email did not even mention the defendant or the Daddy’s Dog article.
Further, the jury was free to reject the testimony of plaintiff’s expert, Bruce Mumford, to the extent that he attributed withdrawal of business to the Daddy’s Dog article and disclosures. Plaintiff’s expert relied heavily on the deposition testimony of Michael Pochna, an employee of AIA. In this regard, Mumford stated, in essence, that AIA decided to stop marketing the plaintiff’s funds due to the Daddy’s Dog article. (Trial tr, motion sequence No. 42, exhibit A at 352.) This conclusion was based on Pochna’s deposition testimony. Pochna in fact explained that he was an employee, and that all business decisions at ALA were made by Thierry de la Villehuchet, who committed suicide due to his involvement in the Madoff scandal. Pochna testified that while de la Villehuchet stated “we have a problem,” in the summer of 2007, with respect to plaintiff and his reputation, de la Villehuchet did not actually identify the Daddy’s Dog article as the source of the problem. (Motion sequence No. 42, exhibits D, C [examination before trial of Michael Pochna] at 20-23.) The jury was not required to credit this vague and conclusory testimony, or the expert’s opinions to the extent that they were based on this and other anecdotal evidence that the Daddy’s Dog article alone was responsible for the business losses.
In addition, Mumford testified that the plaintiff’s businesses began to suffer in June 2007, following the Daddy’s Dog article. However, he was not aware of, and could not identify, how many investors had read the Daddy’s Dog article. His testimony was, in essence, that because the plaintiff’s business began losing revenue in June 2007, the other numerous articles detailing the alleged incest were not the cause of the business losses. (Trial tr, motion sequence No. 42, exhibit A at 384.) The jury may well have rejected this theory of causation, which was *1040 based on a mere alleged correlation between the time of publication of Daddy’s Dog and the loss of hedge fund business. Plaintiff’s expert did not eliminate other potential causes of the plaintiff’s loss of business. In particular, he did not account for financial factors which may have affected hedge funds in 2007, at a time when a credit liquidity crisis presaged a stock market collapse, nor did he rule out other causes particular to the plaintiff’s businesses or the hedge fund market.
Conclusion
Based upon the foregoing, it is hereby ordered that motion sequence Nos. 40 and 41 are granted to the extent of directing a hearing in accordance with the foregoing, except that nominal damages are awarded on motion sequence No. 41 in the amount of $1; and it is further ordered that motion sequence No. 42 is denied.

 None of these articles contain any statements by the defendant, and there is no allegation that the defendant contributed to these articles.